UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIMOTHY HANDEL,

               Petitioner,

        -against-

THOMAS GRIFFIN,

               Respondent.

**OPINION AND ORDER**

17-CV-01439 (PMH)

PHILIP M. HALPERN, United States District Judge:

Timothy Handel ("Petitioner"), in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1, "Petition"), challenges the judgment of the New York State County Court, Orange County, as affirmed by the Supreme Court of New York, Appellate Division, Second Department, convicting him of murder in the second degree and two counts of tampering with physical evidence. (Petition at 12). Petitioner contends that: i) he was deprived of a fair trial; ii) he was not provided effective assistance of counsel; iii) his rights under the Fourth Amendment were violated as a result of the issuance of an improper and overbroad search warrant; and iv) the sentence imposed upon him was excessive. (*Id.* at 7-8).[1]

The Honorable Andrew E. Krause, on November 6, 2025, issued a Report and Recommendation recommending that the Petition be denied. (Doc. 47, "Report" or "R&R"). Petitioner filed objections to the R&R on March 10, 2026. (Doc. 55, "Objections"). Respondent filed a letter in response to the Objections, requesting that the petition be "summarily denied" for the reasons "set forth in . . . the Report and Recommendation." (Doc. 57).

---

[1] Petitioner relies upon and incorporates by reference the arguments made and claims raised in his counseled and *pro se* supplemental briefs on direct appeal. (*See* Petition ¶ 13).

For the reasons stated below, Petitioner's Objections to the Report are overruled and the Court adopts the Report in full.

## BACKGROUND

The factual background of this case is set forth in detail in Judge Krause's November 6, 2025 R&R. (*See* Report at 3-20). As no party has sufficiently objected to Judge Krause's recitation of the facts of this case, the Court assumes familiarity with the facts of the case and adopts them in full. *See Olsen v. Sherry Netherland, Inc.*, No. 20-CV-00103, 2024 WL 2054816, at *1 (S.D.N.Y. May 7, 2024).

In short, Petitioner, in August 2011, was accused of murdering his then girlfriend, Kathleen Connolly ("Ms. Connolly" or the "Decedent"), with whom he had been living since about March 2011, along with their two young daughters. (Report at 3). In March of 2011, Petitioner, Ms. Connolly, and their daughters, moved from Orange County, New York to Lancaster, Pennsylvania, where Ms. Connolly promptly found new employment. (*Id.*). Between March 2011 and July 2011, Ms. Connolly and a coworker at her new job began to develop romantic feelings for one another. (*Id.*). On July 9, 2011, Ms. Connolly was scheduled to work a shift at 1:00 p.m., but never showed up for her shift. (*Id.* at 4). On the same date, Petitioner and his two daughters travelled to New York for Petitioner's uncle's funeral. Subsequently, the three stayed briefly with longtime friends Amanda Corkery and Brian Kent in New Windsor, New York, before moving temporarily into the basement of the house of Bonnie Glazier, a friend from whom Petitioner had previously rented the basement apartment (the "Riley Road Property"). (*Id.*). By this time, between July 9, 2011 and August 3, 2011, no one had heard from Ms. Connolly and she was presumed missing. (*Id.* at 7-10). On August 3, 2011, Investigator James Post ("Investigator Post") procured a search warrant for the Riley Road Property, signed by Judge Jeffrey G. Berry, County Court Judge in the County

of Orange. (Doc. 20-1 at 6-13). Subsequently, on the same day, members of the New York State Police executed the search warrant at the Riley Road Property. They discovered, among other items, Ms. Connolly's dismembered remains, including a rope found around her neck, in multiple black plastic trash bags, buried under the shed on the property. (*Id.* at 11). While Petitioner was arrested for the murder of Ms. Connolly, he maintains that Ms. Connolly committed suicide, and that he found her body, on the night of her death, hanged upon arrival at the Riley Road Property. (*Id.* at 15-16).

On August 25, 2011, Petitioner was charged by indictment with: (1) two counts of murder in the second degree in violation of N.Y. Penal Law § 125.25(1), (2); (2) one count of manslaughter in the first degree in violation of N.Y. Penal Law § 125.20; (3) one count of manslaughter in the second degree in violation of N.Y. Penal Law § 125.15; and (4) two counts of tampering with physical evidence in violation of N.Y. Penal Law § 215.40. (Doc. 20-1 at 2-5, Resp. Ex. 1). Paul Trachte ("Mr. Trachte") represented Petitioner during his criminal proceeding.

Petitioner's jury trial began in Orange County Court on May 14, 2012 before Judge Berry. (Report at 18). Petitioner, on May 30, 2012, was convicted by a jury on one count of murder in the second degree and two counts of tampering with evidence. (*Id.*). On July 3, 2012, Judge Berry sentenced Petitioner to an indeterminate term of 25 years to life in prison for the murder charge, and indeterminate terms of one and one-third to four years for each of the tampering charges, to run consecutively. (Doc. 20-20 at 23-26).

Petitioner, on or about November 19, 2013, filed a direct appeal of his judgment of conviction. (Doc. 20-2 at 2-65, Resp. Ex. 12, "Appellant's Brief"). Petitioner was represented on appeal by Richard L. Herzfeld ("Mr. Herzfeld"). (*Id.*). Respondent, on June 5, 2014, filed a brief in opposition to Appellant's Brief. (Doc. 20-3, Resp. Ex. 13, "Appellee's Brief"). Petitioner, on

3

January 9, 2015, filed a *pro se* supplemental brief in further support of his direct appeal. (Doc. 20-4 at 24-60, Resp. Ex. 18, "*Pro Se* Supplemental Brief"), and Respondent, on June 11, 2015, filed a brief in further response to Appellant's *Pro Se* Supplemental Brief (Doc. 20-5 at 2-38, Resp. Ex. 19, "Appellee's Response to *Pro Se* Brief"). The Appellate Division, Second Department, on November 25, 2015, issued an order affirming Petitioner's judgment of conviction in his direct appeal. (Doc. 20-5 at 39, Resp. Ex. 20, "App. Div. Order"). The New York Court of Appeals, on April 5, 2016, denied Petitioner's application for leave to appeal the order of the Appellate Division. (Petition at 23; Doc. 20-5 at 40, Resp. Ex. 21, "Court of Appeals Order").

Petitioner filed the instant Petition on February 24, 2017. (*See* Petition). Respondent filed opposition on November 16 and 21, 2017 (Docs. 18-20, "Opposition"), and Petitioner filed a reply on April 9, 2018 (Doc. 28, "Reply"). Judge Krause, on November 6, 2025, issued the R&R recommending that the Petition be denied.[2]

## STANDARD OF REVIEW

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Antoine v. Warden*, No. 20-CV-05130, 2021 WL 4066654, at *1 (S.D.N.Y. Sept. 7, 2021) (quoting 28 U.S.C. § 636(b)(1)). "The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record." *Olivo v. Graham*, No. 15-CV-09938, 2021 WL 3271833, at *1 (S.D.N.Y. July 30, 2021) (citing *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). "[A]ny part of the magistrate judge's recommendation that has been properly objected to must be

---

[2] By Order dated March 20, 2017, the Honorable Cathy Seibel—to whom this case was assigned prior to its reassignment to this Court on March 17, 2020—referred this case to the assigned Magistrate Judge. (Doc. 7). On October 15, 2020, the referral was reassigned to Judge Krause.

reviewed by the district judge *de novo*." *Nambiar v. The Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 358 (2d Cir. 2025) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)). An objection is "proper" if it is timely and specific. *Id.* at 359. "A proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.*

## DISCUSSION

Petitioner contends that Judge Krause erred by: (1) recommending denial of Petitioner's right to fair trial claims, including: denial of Petitioner's "right to present a defense regarding Ms. Connolly's state of mind prior to her death" (Objections at 2-5), denial of Petitioner's claim concerning "improper cross-examination" (*id.* at 5-9), denial of Petitioner's claim that the trial court improperly handled jury instructions/jury inquiries relating to jurisdictional presumption and marshaling of evidence thereof *(id.* at 9-11); (2) recommending denial of Petitioner's defective search warrant claims (*id.* at 11-13); (3) finding that Petitioner's trial counsel's failure to object to alleged hearsay objections or other impermissible testimony at trial constituted a meritless ineffective assistance of counsel claim (*id.* at 13-18); (4) finding that Petitioner's trial counsel's failure to renew objections to the alleged improper search warrant and motion to suppress physical evidence at the close of the prosecution's case could not constitute ineffective assistance of counsel (*id.*); and (5) recommending denial of Petitioner's ineffective assistance of appellate counsel claim (*id.*).[3]

---

[3] Upon thorough review of the Objections, it is not clear to the Court that Petitioner objected to Judge Krause's recommendation denying the ineffective assistance of *appellate* counsel claim "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," and therefore constitute a "proper objection." *Nambiar*, 158 F.4th at 359. In fact, Petitioner does not reference his appellate counsel at all in the Objections, other than the blanket catch-all that "[P]etitioner objects to each recommendation to deny his claims of ineffective assistance of counsel." (Objections at 18). Nevertheless, in light of Petitioner's *pro se* status, the Court will construe such statement as a "proper objection" for the purposes of the ineffective assistance of appellate counsel claim and conduct a *de novo* review of Judge Krause's recommendation, as required where a "proper objection" is made. *Nambiar*, 158 F.4th at 359.

In deciding a petition for writ of habeas corpus seeking relief from a decision of a state court, "a federal court cannot disturb a state court's decision on a case or issue that rests on an independent and adequate state ground." *Murray v. Noeth*, No. 21-CV-05343, 2024 WL 4350913, at *10 (S.D.N.Y. Sept. 30, 2024). "When a state court has decided a case on an independent and adequate state ground—whether substantive or procedural—[federal courts] decline to review the state court's decision." *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010). Claims that are decided based on independent and adequate state grounds are subject to a procedural bar. *Id.*

If, however, a habeas petitioner's claim is adjudicated on the merits, federal courts apply "the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')" to the petitioner's claims. *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006). "Applying AEDPA deference, a federal court may grant a writ of habeas corpus if the state court's adjudication on the merits 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). A decision of a state court is "contrary to" clearly established federal law "if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Id.* (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000)). For a decision of a state court to be "unreasonable," it must not just be incorrect, but must have "[s]ome increment of incorrectness beyond error." *Id.* at 243 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A court may also grant a writ of habeas corpus if the adjudication on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "The state court's

6

factual findings are presumed correct unless rebutted by clear and convincing evidence." *Martinez v. Capra*, 675 F. App'x 46, 47 (2d Cir. 2017) (summary order) (citing 28 U.S.C. § 2254(e)(1)).

I.    Timeliness

Judge Krause found that Petitioner timely filed the Petition. (Report at 23). Because no party timely objected to that finding, the Court reviews it for clear error. *Olivo*, 2021 WL 3271833, at *1 (citing *Wilds*, 262 F. Supp. 2d at 169).

Judge Krause correctly found that Petitioner's conviction became final on June 4, 2016, ninety days after the New York Court of Appeals denied Petitioner leave to appeal the decision of the Appellate Division. (Report at 23); *see also McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) ("Because [petitioner] did not file a petition for certiorari seeking review of the New York state-court decisions in the United States Supreme Court, his conviction became final ninety days after . . . the date of the order denying his application for leave to appeal to the New York Court of Appeals."). Petitioner then had one year, until June 4, 2017, to file a habeas petition challenging his conviction. *See Artuz*, 150 F.3d at 98. Petitioner filed the Petition on February 17, 2017, by operation of the prison mailbox rule. (*See* Petition; *see also* Report at 23). Thus, there is no clear error in Judge Krause's finding that the Petition was timely filed.

II.    Denial of Petitioner's Right to a Fair Trial Claims

Petitioner argues that as a result of certain of the trial court's rulings, he was denied the right to a fair trial. (*See* Petition at 4, 7-8; Appellant's Brief at 45-55). Because Petitioner properly objected to the R&R's recommendations regarding Petitioner's claims of denial of a right to a fair trial, the Court conducts a *de novo* review. *See Nambiar*, 158 F.4th at 358. For the reasons set forth below, the Court agrees with Judge Krause and the New York state courts that Petitioner was not denied a right to a fair trial and, accordingly, adopts the R&R in full as to these claims.

A.   <u>Denial of the Right to Present a Defense Concerning the State of Mind of the Victim</u>

Petitioner objects to Judge Krause's finding that the Appellate Division's ruling denying Petitioner's claim as "without merit," was neither "contrary to nor an unreasonable application of, federal law." (Objections at 2-3; *see also* Report at 27). Petitioner argues that the trial court's "erroneous ruling" that "granted the people's pre-trial in limine application to preclude the defense from asking witnesses (or calling witnesses to testify) about statements made by petitioner [to other witnesses] that Ms. Connolly ha[d] been suicidal" "rose to the level of a constitutional dimension." (Objections at 3). Specifically, Petitioner contends he should have been successful on his claim because "(1) the hearsay rule was not violated since the law of the case was established by the prosecutors' questioning of their witnesses about hearsay conversations had with petitioner that tended to be incriminating; (2) exclusion of the proffered testimony of these witnesses is contrary to petitioner's fundamental right to compulsory process and deprivation of same constitutes an abridgement of his right to a fair trial and due process . . . and [such] right . . . was further impinged since the proffered testimonies established a reasonable doubt that would have existed on the record." (*Id.* at 3-4).[4]

---

[4] As an initial matter, Petitioner's first argument of his Objections concerning the purported "law of the case doctrine," is made improperly here for the first time in objections to the R&R, and would "therefore be an improper basis to reject" the R&R. *See In re Niedbalski*, No. 21-MC-00747, 2023 WL 4399003, at *2 (S.D.N.Y. July 7, 2023) (citing *Piligian v. Icahn Sch. Of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.")). In any event, even upon the Court's *de novo* review, and without holding that such doctrine even applies to this scenario, such conclusory and unsupported argument fails, as "at best, [the law of the case doctrine is] a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided," and as Judge Krause rightly determined (Report at 24-27), the trial court's evidentiary rulings (*see, e.g.*, Doc. 20-10 at 355:7-25) were not improper, but rather, constituted a sound use of discretion. *See United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000).

Upon *de novo* review, the Court agrees with Judge Krause's recommendation that Petitioner was not deprived of a right to a fair trial on this ground and finds that the Appellate Division's determination that Petitioner's claim is "without merit," is not contrary to, or an unreasonable application of, federal law.

While "state evidentiary rulings are generally . . . not subject to habeas review," an alleged erroneous ruling "may qualify for habeas relief only if such error violated petitioner's due process rights to such an extent as to [result in] a fundamentally [un]fair trial." *Daniel v. Conway*, 498 F. Supp. 2d 673, 682 (S.D.N.Y. 2007*); see also Freeman v. Kadien*, 684 F.3d 30, 35 (2d Cir. 2012) ("A federal habeas court may, of course, review an error of state evidentiary law to assess whether the error deprived the petitioner of his due process right to a 'fundamentally fair trial.'").

Here, even if the state court's decision to exclude testimony regarding petitioner's out-of-court statements regarding Ms. Connolly's state of mind did violate a state evidentiary rule, Petitioner has failed to show that any resulting error deprived him of a "fundamentally fair trial." *See Freeman*, 684 F.3d at 35. Specifically, and as Judge Krause noted, Petitioner testified on his own behalf as to alleged conversations with Ms. Connolly concerning her state of mind in the days leading up to her death, along with multiple other individuals, including Peter Cunningham, Joe Nucole, and "Uncle Bud." (Doc. 20-16 at 1025:20-1026:11, 1026:13-1027:11, 1031:21-1036:21).

Accordingly, upon *de novo* review, the Appellate Division's decision to deny Petitioner's direct appeal as to this prong was not contrary to, or an unreasonable application of, federal law, and the Court adopts in full Judge Krause's finding that Petitioner was not deprived of a fundamentally fair trial.

    B.  <u>Improper Cross-Examination of Petitioner</u>

Petitioner objects to the R&R's finding that the prosecutor's cross-examination of Petitioner during trial, while in some cases objectionable, did not rise to the level of prosecutorial misconduct. (Objections at 5-9). Specifically, Petitioner claims that the strategies employed by the prosecutor "rose to the level of prejudice that 'rendered the trial fundamentally unfair'" and therefore maintains that the Appellate Division's decision to reject Petitioner's appeal on this prong was "contrary to, or an unreasonable application of federal law." (*Id.* at 5-6). The Court, upon *de novo* review, disagrees with Petitioner, and agrees with both Judge Krause's well-reasoned opinion that the actions of the prosecutor did not constitute prosecutorial misconduct, and the Appellate Division's holding that Petitioner "was not deprived of a fair trial by the prosecutor's cross examination of him." (Report at 29; *see also* App. Div. Order).

For the prosecutor's cross-examination of Petitioner to rise to the level of a constitutional violation, the conduct must "infect the trial with unfairness as to make the resulting conviction a denial of due process," and can only constitute such a denial where the actions amount to "egregious misconduct." *Hayes v. Lee*, No. 10-CV-05134, 2013 WL 4008638, at \*10 (S.D.N.Y. July 30, 2013) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The following three factors are considered in analyzing a prosecutor's purported misconduct, including: "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." *See United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995).

Regardless of Petitioner's disagreement with the prosecution's alleged "sand lot tactics," upon review of the record at hand, the Court agrees with Judge Krause that none of the prosecution's conduct, whether taken together, or individually, rose to the requisite level to constitute prosecutorial misconduct. (*See* Report at 29). Specifically, upon independent review of the trial transcript, and review of Appellant's Brief, the Court concludes that while the

prosecution's tone in certain cases could be construed to be overzealous (*see, e.g.*, Doc. 20-16 at 1056:14-6, 1066:20-1067:1, 1078:15-1080:4, 1083:16-1084:7, 1088:20-1090:5, 1099:17-1100:10), none of the actions amounted to "egregious misconduct." *See Hayes*, 2013 WL 4008638, at *10. Further, as Judger Krause aptly identifies, the Petitioner's counsel's objections, and the trial court's various directives to the jury to disregard such inquiries, served to effectively "cure the misconduct" (Report at 29). Finally, despite Petitioner's unsupported assertions that "save for the prosecutor's misconduct, his credibility was intact," and that the "quantity of the evidence presented by the prosecution was balanced against that of the defense's" (Objections at 8), the Court disagrees based upon its independent review of the trial transcript. (*See generally*, Docs. 20-7 to 20-19). This Court agrees with Judge Krause that "the evidence of Petitioner's guilt in this case . . . was sufficiently strong such that there is little doubt that the jury would have found Petitioner guilty even without the prosecutor's statements." (Report at 29).

Accordingly, the Appellate Division's rejection of Petitioner's claim was not contrary to, nor an unreasonable application of federal law, and the Court thus adopts Judge Krause's recommendation in full.

C.  Improper Jury Instructions, Marshaling of Evidence, and Unpreserved Objections

Petitioner objects to Judge Krause's finding that the trial court's marshaling of evidence related to geographical jurisdiction was "even handed," and claims that both the "contemporaneous objections rule" does not apply here, and/or that trial counsel "lodged appropriate objections, thus preserving the record for appeals purposes." (Objections at 9-11). But Judge Krause correctly found that the trial court's marshaling of evidence was proper and "even handed," and that the Appellate Division's decision as to those portions of the claim deemed unpreserved for appellate

11

review was proper as a dismissal on an "adequate and independent state law ground." (Report at 30-35).

As an initial matter, in order for a federal habeas court to determine alleged improper marshaling of evidence by the trial court, the reviewing court must "establish not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughton*, 414 U.S. 141, 146 (1973); *see also McEachin v. Ross*, 951 F. Supp. 478, 483 (S.D.N.Y. 1997) (standard of review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.").

Here, the trial judge, as both the Appellate Division and Judge Krause found, did not improperly marshal the evidence concerning geographical jurisdiction, as such marshaling was "fair." (App. Div. Order at 879). Specifically, Judge Berry's multiple rounds of clarifications and instructions to the jury (*see, e.g.*, Doc. 20-19 at 1318-25), in no way created an "appearance of partiality." *See Copeland v. Walker*, 258 F. Supp. 2d 105, 137 (E.D.N.Y. 2003). Accordingly, the Appellate Division properly held that the decision to deny Petitioner's claim on this ground was neither contrary to, nor an unreasonable application of federal law.

Additionally, upon *de novo* review, the Court finds that Judge Krause correctly confirmed that the Appellate Division's holding that Petitioner's failure to comply with the contemporaneous objection rule, C.P.L. § 470.05(2), constituted dismissal on an "independent and adequate state ground," and thus is not proper for habeas review. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Despite Petitioner's unsupported and conclusory objection that C.P.L. § 470.05(2) "is not applicable," (Objections at 11), it is plain that this provision "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011). To establish

otherwise, Petitioner would have to "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *See Thomas v. Kirkpatrick*, No. 18-CV-000051, 2023 WL 5510116, at \*7 (S.D.N.Y. Aug. 25, 2023). As Judge Krause correctly held, Petitioner has failed to demonstrate either of the prongs above set forth by *Thomas*.

Accordingly, the Court adopts the R&R in full and denies each of Petitioner's arguments concerning his right to fair trial claims.

III.    Petitioner's Claim Regarding the Purported Defective Search Warrant

Petitioner argues here that the search warrant was "issued on insufficient evidence," "improperly amended," and "outside the scope" of what was allegedly authorized. (*See* Petition at 7; Objections at 11-13). For the reasons set forth below, the Court, upon a *de novo* review, agrees with Judge Krause and the New York state courts that Petitioner's claims related to the purported defective search warrants be denied, and accordingly, adopts the R&R in full on this claim.

The crux of Petitioner's claim concerning the search warrant is that Petitioner was "deprived of a full and fair opportunity to litigate the claim." (Objections at 12). However, "mere dissatisfaction or disagreement with the outcome of a [Fourth Amendment] suppression motion is not sufficient" to satisfy the carveouts for habeas review of Fourth Amendment claims. *See Hayes v. Lee*, No. 11-CV-01365, 2015 WL 5943677, at \*9 n.10, \*37 n. 36 (S.D.N.Y. Oct. 13, 2015) ("Fourth Amendment claims are only cognizable on habeas review, then, if the state 'provided no corrective procedures at all to address fourth amendment violations,' or the defendant was 'precluded from using that mechanism because of an unconscionable breakdown in the underlying process'"). Here, Petitioner took the opportunity to avail himself of the state court procedure at multiple stages, utilizing pre-trial motion practice at the trial court level, which was rejected on

the merits (Doc. 20-1 at 65-66, "Resp. Ex. 10"); and at the Appellate Division which similarly denied Petitioner's fourth amendment arguments on the merits (*see* App. Div. Order at 879-80 ("the defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit")). Despite Petitioner's apparent issue with the "broad and nebulous" holding of the Appellate Division (Objections at 12-13), it is plain that the Second Circuit views such a holding as sufficient to constitute adjudication on the "merits." *See Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002) (holding that the "state court need not mention the argument raised or cite relevant case law in order for its ruling to constitute an 'adjudication on the merits,'" and as such, the state court stating, "defendant's remaining contentions are without merit," was sufficient to constitute the claim being "adjudicated on the merits"). Consequently, Petitioner's unsupported contention that such a decision "rendered it virtually impossible for petitioner to move further in pursuit of his liberty interest with a cogent appeal" is of no moment.

Accordingly, upon *de novo* review, the Court finds that Judge Krause correctly recommended that Petitioner's purported defective search warrant claim be denied, and adopts this portion of the R&R in full. (Report at 35-37).

IV.     Ineffective Assistance of Counsel

Petitioner next argues that he was provided with ineffective assistance of both trial and appellate counsel. (*See* Petition at 7-8; *Appellant's Brief* at 56-60; *Pro Se* Supplemental Brief at 53-58). For the reasons set forth below, the Court, upon a *de novo* review, agrees with Judge Krause and the New York state courts that neither Mr. Trachte nor Mr. Herzfeld was ineffective in representing Petitioner and, accordingly, adopts the R&R in full as it relates to Petitioner's claims of ineffective assistance of counsel.

14

Ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Petitioner to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Id.* at 687-90. "Second, [Petitioner] must show that the deficient performance prejudiced the defense." In other words, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 411 U.S. 365, 381 (1986)). The Second Circuit and Supreme Court have indicated that "*double deference* is appropriate when evaluating *Strickland* claims governed by § 2254(d)." *Gen. Waiters v. Lee*, 857 F.3d 466, 477 n.20 (2d Cir. 2017) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

### A. Trial Counsel's Failure to Object to Hearsay at Trial

Petitioner objects to Judge Krause's finding that Petitioner's claim for ineffective assistance of trial counsel was "meritless," in accord with the Appellate Division's holding that that this claim, as well as all others that were not specifically addressed in the App. Div. Order, were "without merit" (Report at 38). He argues that "tactic and strategy should not suffice to justify counsel's failure to object when obvious constitutional violations are being perpetrated against petitioner" (Objections at 14). Petitioner further argues that "[t]here is no indication, assertion or circumstance that would support the position taken by the Report and Recommendation that when

15

counsel did not object, that it was some scheme or strategy being deployed in the interest of defend[ing] [sic] his client," as "[t]he omissions of counsel were tantamount to petitioner not having counsel in those instances." (*Id.* at 14, 17). The Court agrees with Judge Krause that Petitioner failed to meet his burden of establishing that Mr. Trachte's performance was deficient under either, or both prongs of the *Strickland* analysis, rendering such claim "without merit." (Report at 38-39).

To demonstrate a violation of the right to effective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Brown v. Artuz,* 124 F.3d 73, 79 (2d Cir.1997) (quoting *Strickland,* 466 U.S. at 687). Additionally, the Supreme Court has held that in reviewing counsel's conduct, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690.

Here, upon *de novo* review, the Court finds that Petitioner has not established that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Mr. Trachte, Petitioner's trial counsel, sufficiently conducted himself during Petitioner's trial through his various objections to the prosecution's lines of questioning and through his involving the trial court in adjudicating evidentiary matter concerning such objections. (*See, e.g.*, Doc. 20-10 at 376:4-377:2, 380:21-381:7; Doc. 20-12 at 692:16-22; Doc. 20-16 at 1014:5-1014:13, 1028:1-8, 1054:20-25). Further, a failure to object may be considered a "strategic decision," and counsel is not "required to raise an objection in order to render effective assistance." *Cooper v. United States*,

16

No. 13-CV-03769, No. 08–CR–00356, 2015 WL 9450625, at *13 (S.D.N.Y. Dec. 22, 2015). While Petitioner may have arguably chosen to object to more lines of questioning than his lawyer did, Petitioner has plainly failed to show that any of these alleged missteps would have resulted in a different outcome at trial, especially considering the weight of evidence offered at trial against Petitioner.

Accordingly, upon *de novo* review, the Appellate Division's determination that Petitioner's claims were "without merit" is not contrary to, or an unreasonable application of, clearly established federal law.

> B. <u>Trial Counsel's Failure to Renew Objections to the Alleged Improper Search Warrant and Motion to Suppress Physical Evidence at the Close of Petitioner's Trial</u>

Petitioner objects to the R&R's finding that Mr. Trachte "was not ineffective for failing to renew the motion to suppress" because "[t]here was no legitimate explanations for counsel's failure." (Objections at 15). However, upon *de novo* review, the Court agrees with Judge Krause that Petitioner has failed to sufficiently show that any of his alleged Fourth Amendment claims, renewed or otherwise, have merit, and thus his ineffective assistance of counsel claims on this prong similarly fail. (*See* Report at 40-43).

Where an ineffective assistance of counsel claim is premised on "counsel's failure to raise Fourth Amendment issues," the Petitioner must show that any such Fourth Amendment claim is "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006). Accordingly, and as Judge Krause found, it is plain that none of the bases Petitioner states in his *Pro Se* Supplemental Brief (*see Pro Se* Supplemental Brief at 53-57), nor in his Objections, raise any meritorious Fourth Amendment concerns. (Report at 40-43).

First, Petitioner's contentions that Investigator Post misled the judge who issued the warrants by not being forthright about his role in the case, is not sufficient to state any Fourth Amendment claim. Investigator Post's testimony at trial did not in any way mar his credibility or veracity as to the search warrants. (*See* Doc. 20-12 at 619:11-23, 626:2-10). Specifically, whether Investigator Post was a lead investigator or simply assisted with the investigation is not probative, as the supporting affidavit for the search warrant is consistent with any such alleged "misleading" trial testimony. (*See* Doc. 20-1, Resp. Ex. 2, at 7-13).

Second, Petitioner's argument that the evidence seized was taken in violation of Petitioner's legitimate expectation of privacy, upon reliance of a voluntary consent form and unsworn testimony of other witnesses, holds no weight and cannot be construed to raise any meritorious Fourth Amendment concerns. Petitioner has failed to provide any new evidence from the trial that could have provided Mr. Trachte with any reason to renew the motion to suppress, aside from recycled arguments. Accordingly, no ineffective assistance of counsel claim may lie as to this strand of Petitioner's arguments.

Finally, Petitioner's unsupported arguments and issues with the handwritten amendments to the original affidavit in support of the search warrant similarly cannot, upon any reasonable application of Supreme Court precedent, support an ineffective assistance of counsel claim. Petitioner cites to no proper supporting evidence as to these handwritten amendments being presented to Mr. Trachte for the first time at the start of trial (*see Pro Se* Supplemental Brief at 55). Respondent, on the other hand, provides an affidavit claiming that the expanded scope was presented at the time the search warrant was signed by the issuing judge (Doc. 18 at 3-4). Thus, this Court finds that Petitioner has failed to sufficiently set forth evidence to show that a meritorious Fourth Amendment claim existed, and therefore, fails to show that Mr. Trachte's

choice not to renew the motion to suppress on this basis constitutes ineffective assistance of counsel.

Accordingly, the Appellate Division's determination that Petitioner's claims were "without merit" is not contrary to, or an unreasonable application of, clearly established federal law, and the Court thus adopts the Report's analysis and conclusion in full.

    C.   <u>Appellate Counsel's Failure to Raise Certain Issues Petitioner Wanted to Raise in the Direct Appeal Filing with the Appellate Division</u>

As noted *supra*, Petitioner states the following catch-all objection that could arguably be construed to apply to Judge Krause's finding regarding Petitioner's appellate counsel, Mr. Herzfeld: "[P]etitioner objects to each recommendation to deny his claims of ineffective assistance of counsel." (Objections at 18). Judge Krause, however, correctly found that Petitioner's claim is unexhausted (*see* Report at 44); and in any event, Petitioner's claim fails as the Appellate Division denied such claims as "without merit" (*id.* at 45). Accordingly, Petitioner's claim for ineffective assistance of counsel as to Mr. Herzfeld fails.

Petitioner has failed to demonstrate that he brought a petition for a writ of error *coram nobis* in the Appellate Division (*see generally Pro Se* Supplemental Brief), as is required in order to exhaust any ineffective assistance of appellate counsel claim. *See Vilsaint v. Annucci*, No. 23-CV-05563, 2024 WL 3274729, at *2 (S.D.N.Y. Jul. 2, 2024). Petitioner has failed to even provide any explanation as to why such a writ was not filed. (*Pro Se* Supplemental Brief at 57-59). Standing alone, this is enough to deny Petitioner's claim. *See Vilsaint*, 2024 WL 3274729, at *2. In any event, Petitioner has failed to sufficiently show that under *Strickland*, Mr. Herzfeld's actions in opting not to include Petitioner's requested arguments in the Appellate Brief would have "succeeded before the state's highest court," as Petitioner included such claims in the *Pro Se*

Supplemental Brief and the Appellate Division concluded that such claims were "without merit." (*See* App. Div. Order at 880).

Accordingly, upon *de novo* review, the Court agrees with the Appellate Division and Judge Krause and determines that Petitioner's ineffective assistance of appellate counsel claim was unexhausted, and in any event, insufficient under *Strickland*, and thus deficient. The Court therefore adopts the Report's analysis and conclusion in full.

V.    Excessive Sentence Claim

Judge Krause found that Petitioner failed to raise a cognizable federal constitutional issue with respect to his excessive sentence claim. (Report at 46-47). Because no party timely objected to these findings, the Court reviews these findings for clear error. *Olivo*, 2021 WL 3271833, at *1 (citing *Wilds*, 262 F. Supp. 2d at 169).

Judge Krause correctly found that the sentence imposed by the trial court, including 25 years to life for the second-degree murder charge, and one and one-third to four years for each of the two tampering with physical evidence charges, were within the statutory limits, and thus "no constitutional issue is presented for habeas review." (Report at 46-47); *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); N.Y. Penal Law §§ 125.25, 70.00(2)(a), 70.00(3)(a)(i), 70.00(2)(e), 70.00(3)(b). Additionally, Judge Krause correctly found that Petitioner failed to show that "the state court's decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." (Report at 46-47 (citing *Arnold v. Superintendent of Upstate Corr. Facility*, No. 21-CV-10423, 2022 WL 18542750, at *15 (S.D.N.Y. Sept. 24, 2022), *adopted by*, 2023 WL 1438729 (S.D.N.Y. Feb. 1, 2023)). Thus, there

20

is no clear error in Judge Krause's recommendation that Petitioner's excessive sentence claim be denied.

### VI.    Certificate of Appealability

Finally, Judge Krause found that "[a]s the Petition presents no questions of substance for appellate review, . . . a certificate of probable cause should not issue." (Report at 47). Because no party timely objected to these findings, the Court reviews these findings for clear error. *Olivo*, 2021 WL 3271833, at *1 (citing *Wilds*, 262 F. Supp. 2d at 169).

A certificate of appealability may issue if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, for the reasons discussed above and in the Report, Petitioner has failed to make this showing. Accordingly, Judge Krause's recommendation demonstrates no clear error, and thus, no certificate of appealability shall issue.

### CONCLUSION

Petitioner's Objections to the Report are overruled, and the Court adopts the Report in its entirety.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:   White Plains, New York
         April 13, 2026

_____

PHILIP M. HALPERN
United States District Judge